# EXHIBIT 35



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

August 4, 2014

The Honorable Bill de Blasio
City Hall
260 Broadway
New York, NY 10007

Commissioner Joseph Ponte
New York City Department of Correction
75-20 Astoria Blvd.
East Elmhurst, NY 11370

Zachary Carter
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

        RE:    <u>CRIPA Investigation of the New York City Department of Correction Jails on Rikers Island</u>

Dear Mayor de Blasio, Commissioner Ponte, and Mr. Carter:

      We write to report the findings of the investigation of the United States Attorney's Office for the Southern District of New York into the treatment of adolescent male inmates, between the ages of 16 and 18, at New York City Department of Correction ("DOC" or the "Department") jails on Rikers Island ("Rikers").[1]  By letter dated January 12, 2012, we notified the City of our intent to conduct an investigation pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997, and Section 14141 of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("Section 14141").  CRIPA and Section 14141 give the United States Department of Justice the authority to seek a remedy for a pattern or practice of conduct that violates the constitutional rights of inmates in detention and correctional facilities.  Our investigation has centered exclusively on whether DOC adequately protects adolescents from harm.  More specifically, we have focused on whether adolescents are subject to excessive and unnecessary use of force by DOC correction officers and their supervisors, whether DOC adequately protects adolescents from violence by other inmates, and whether DOC's extensive reliance on punitive segregation subjects adolescents to an excessive risk of harm.

---

[1] When we use the term "adolescents" or "adolescent inmates" in this letter, we are referring to male inmates between the ages of 16 and 18 housed at Rikers.

We primarily focused on practices and conduct during the period 2011 through the end of 2013. We reviewed hundreds of thousands of pages of records from both DOC and the Department of Health and Mental Health ("DOHMH"), which is responsible for providing medical services to inmates at Rikers.[2] These records included, among other things, use of force investigative files, inmate medical records, policies and procedures, training materials, disciplinary records, programmatic materials related specifically to adolescent inmates, and other data. We identified a sample of approximately 200 use of force incidents involving adolescent inmates, and specifically requested all records related to these incidents, including use of force reports, investigative reports and files, video surveillance, inmate medical records, and records relating to any disciplinary action taken against involved inmates or staff.[3] The Appendix to this letter includes summaries of several of these incidents, which are intended to illustrate some of the systemic problems we have identified through our investigation.

In addition, on January 8-11, 2013, and April 8-12, 2013, we conducted tours of those DOC facilities that house adolescent inmates together with a consultant who is an expert in corrections generally and use of force specifically. Together with our consultant, we interviewed staff from DOC and DOHMH on issues related to our investigation, including use of force policies and practices, inmate supervision, staffing, the use of punitive segregation, medical treatment of injuries, security, investigations, training, programs specific to adolescent inmates, and facilities management. Our consultant also interviewed 46 adolescent inmates.[4] Additionally, we had discussions with former Commissioner Schriro and her senior staff in January 2013 and December 2013.

We also conducted additional witness interviews, including interviews with staff from the Board of Correction, an independent board established by the City Charter responsible for ensuring DOC's compliance with minimum correctional standards. Finally, we reviewed materials provided to us by third parties, including the Board of Correction and the Legal Aid Society.

---

[2] We did not undertake a review of the adequacy of medical or mental health services provided to adolescent inmates at Rikers. Our discussions with DOHMH staff and review of DOHMH records were purely in support of our investigation into staff use of force, inmate-on-inmate violence, and the use of punitive segregation. However, our investigation nonetheless raises serious concerns about the quality of mental health services at Rikers; this critical issue, which warrants considerable attention and potentially raises concerns both under CRIPA and the Americans with Disabilities Act ("ADA"), may be addressed in a future investigation by this Office.

[3] For various reasons, including because DOC was unable to locate some videos, and because DOC did not provide us with open DOC Investigation Division and staff disciplinary files, we did not receive all relevant records for these sample incidents.

[4] After City attorneys expressed their desire to sit in on these interviews, we reached an agreement with the City whereby our consultant interviewed inmates one-on-one, outside both our presence and the presence of City attorneys, to encourage full and candid discussion between the inmates and our consultant. We participated, however, in the interview of one adolescent inmate—Inmate D—who was involved in a use of force that is highlighted in the Appendix to this report.

We thank DOC staff for their cooperation and professionalism throughout the course of this investigation. The City has provided us with access to personnel and a large volume of records, and we have every reason to believe that the City will be receptive to our recommendations. Consistent with the statutory requirements of CRIPA, we now write to advise you of the findings of our investigation and the minimum remedial steps necessary to address the serious deficiencies we have identified. 42 U.S.C. § 1997b.

We conclude that there is a pattern and practice of conduct at Rikers that violates the constitutional rights of adolescent inmates. In particular, we find that adolescent inmates at Rikers are not adequately protected from harm, including serious physical harm from the rampant use of unnecessary and excessive force by DOC staff. In addition, adolescent inmates are not adequately protected from harm caused by violence inflicted by other inmates, including inmate-on-inmate fights. Indeed, we find that a deep-seated culture of violence is pervasive throughout the adolescent facilities at Rikers, and DOC staff routinely utilize force not as a last resort, but instead as a means to control the adolescent population and punish disorderly or disrespectful behavior. Moreover, DOC relies far too heavily on punitive segregation as a disciplinary measure, placing adolescent inmates—many of whom are mentally ill—in what amounts to solitary confinement at an alarming rate and for excessive periods of time.

As discussed more fully below, these conditions have resulted in serious harm to adolescent inmates at Rikers. As a result of staff use of excessive force and inmate violence, adolescents have sustained a striking number of serious injuries, including broken jaws, broken orbital bones, broken noses, long bone fractures, and lacerations requiring sutures.

Our focus on the adolescent population should not be interpreted as an exoneration of DOC practices in the jails housing adult inmates. Indeed, while we did not specifically investigate the use of force against the adult inmate population, our investigation suggests that the systemic deficiencies identified in this report may exist in equal measure at the other jails on Rikers.[5]

We recognize that Commissioner Ponte recently assumed the position and was not present when the misconduct detailed in this letter occurred. We look forward to engaging in good faith discussions with the Commissioner and all interested parties to address the issues we have identified and implement appropriate remedial measures.

---

[5] The Department is currently the subject of a class action lawsuit brought by current and former inmates at Rikers alleging system-wide, unconstitutional use of force by staff against inmates. *See Nunez v. City of New York*, 11 Civ. 5845 (LTS) (THK).

## I. SUMMARY OF FINDINGS

We find that the New York City Department of Correction systematically has failed to protect adolescent inmates from harm in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. This harm is the result of the repeated use of excessive and unnecessary force by correction officers against adolescent inmates, as well as high levels of inmate-on-inmate violence.

We have made the following specific factual determinations:

- force is used against adolescents at an alarming rate and violent inmate-on-inmate fights and assaults are commonplace, resulting in a striking number of serious injuries;
- correction officers resort to "headshots," or blows to an inmate's head or facial area, too frequently;
- force is used as punishment or retribution;
- force is used in response to inmates' verbal altercations with officers;
- use of force by specialized response teams within the jails is particularly brutal;
- correction officers attempt to justify use of force by yelling "stop resisting" even when the adolescent has been completely subdued or was never resisting in the first place; and
- use of force is particularly common in areas without video surveillance cameras.

Furthermore, we identified the following systemic deficiencies that contribute to, exacerbate, and indeed are largely responsible for the excessive and unnecessary use of force by DOC staff. Many of these systemic deficiencies also lead to the high levels of inmate violence. These deficiencies include:

- inadequate reporting by staff of the use of force, including false reporting;
- inadequate investigations into the use of force;
- inadequate staff discipline for inappropriate use of force;
- an inadequate classification system for adolescent inmates;
- an inadequate inmate grievance system;
- inadequate supervision of inmates by staff;
- inadequate training both on use of force and on managing adolescents; and
- general failures by management to adequately address the extraordinarily high levels of violence perpetrated against and among the adolescent population.

Finally, DOC's use of prolonged punitive segregation for adolescent inmates is excessive and inappropriate.