# EXHIBIT 1

MBHHNunC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARK NUNEZ, et al.,

                Plaintiffs,

         v.                              11 Civ. 5845 (LTS)

CITY OF NEW YORK, et al.,

                Defendants.              Conference

------------------------------x

                                         November 17, 2022
                                         2:30 p.m.

Before:

                    HON. LAURA TAYLOR SWAIN,

                                         Chief District Judge

                         APPEARANCES

THE LEGAL AID SOCIETY
     Attorneys for Plaintiff Class
BY:  MARY LYNNE WERLWAS
     KAYLA SIMPSON
     -and-
EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL, LLP
BY:  DEBRA L. GREENBERGER


DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
JEFFREY K. POWELL
LARA K. ESHKENAZI
     Assistant United States Attorneys
```

MBHHNunC

                    APPEARANCES (Continued)

New York City Law Department
BY:  KIMBERLY JOYCE
     SHERYL NEUFELD
     Assistants Corporation Counsel

STEVE J. MARTIN
     Court Monitor

ANNA E. FRIEDBERG
     Deputy Court Monitor


Also Present:

Louis Molina, Commissioner DOC
Christina Vanderveer, Deputy Associate Monitor
Alycia Karlovich, Analyst
Dennis Gonzalez, Associate Director

1  remedial orders, and existing local, state, and federal laws
2  and regulations that are in place.  If the receiver can't work
3  within those confines, if those laws or regulations prevent
4  them from carrying out their duties and responsibilities set
5  forth by the Court, only then can the receiver petition the
6  Court for additional powers necessary to achieve compliance
7  with the Court's orders.  Notably, this is similar to what the
8  city is doing now by seeking authority from the Court to hire
9  facility leadership from outside the current uniform ranks.
10          Appointment of a receiver will set things back rather
11  than move things forward, especially when there is already the
12  leadership in place, the interagency collaboration, and the
13  focus of resources that have never been seen before that is
14  able to turn the tide now.
15          Thank you, your Honor.  And I'm going to turn now to
16  Commissioner Molina, and I'm happy to answer whatever questions
17  the Court may have.
18          THE COURT:  Thank you.  I'll hold my questions for
19  now.
20          Commissioner Molina.
21          MR. MOLINA:  Good afternoon, your Honor.
22          THE COURT:  Good afternoon.
23          MR. MOLINA:  Thank you for the opportunity to address
24  the Court again and to share with the Court the progress the
25  department has made under the action plan developed jointly

1     with the monitor.
2          The monitor has previously stated that for the
3     department to move forward with sustainable reforms, its
4     leadership must address four foundational issues:  (1) Deeply
5     flawed security practices that are inconsistent with best
6     correctional practices, (2) inadequate supervision of rank and
7     file staff and facility leadership, (3) staffing practices and
8     procedures that fail to effectively deploy staff across the
9     agency, and (4) a timely and meaningful discipline process with
10    the goals of both accountability and improved work performance.
11         Since being appointed by Mayor Adams the Department of
12    Correction leadership team has been focused on addressing these
13    four foundational issues.  The action plan approved by this
14    Court in June memorialized the pathway forward for building the
15    department's ability to reform itself.
16         I understand the public and the parties to this
17    consent judgment are frustrated with what went on for the last
18    six years, from 2015 to 2021.  However, this administration is
19    committed to resolving the long-standing systemic issues that
20    have plagued the department.
21         The challenges before us are complex and require
22    correctional and business management expertise and experience.
23    Antiquated thinking and transitioning of this city's
24    responsibility to third parties, such as a receiver, will not
25    solve these issues.  Your Honor, my team and I will.  The

department around.  We have the expertise to do it.

Your Honor, the tough decisions that I've had to make and will have to make in the future do not come easy.  It is unfortunate that after so long that the reasons we are at this point is because of the intentional disinvestment in this department's staff, infrastructure, and people in custody from 2015 to 2021.  Today we are asking for the option to select highly qualified candidates from outside of the department to lead our facilities.  I do not take for granted the contributions of our current wardens and acting wardens.  Without them we would not have accomplished so much in the last 11 months, from turning around our young adult facility, which at the start of the year was the department's most violent, and bringing it to a level of calm that it has not experienced for some years, to increasing court production from 60 percent in January of this year to over 90 percent citywide today, to implementing measures and engaging with their respective staff to get officers to return to work, reducing the percentage of staff out sick from 26.1 percent in January to 12.2 percent today.  But we still have a great more that needs to be done.

Your Honor, asking for the flexibility to hire outside candidates does not lessen my appreciation for the current wardens and acting wardens who have stepped up to the challenge.  I believe that with this infusion of talent, one day in the future the department will once again have wardens

1          The Court recognizes that there have been stops,
2     starts, and backward progression over the past six years.
3     However, there are concrete steps being taken now, there are
4     concrete structural changes, and there are indications of
5     progress that the Court does not find appropriate to impede or
6     further complicate at this time.
7          With the aid of meaningful and detailed continued
8     reporting from the monitor, including special reporting as may
9     be necessary, the Court will hold the defendants accountable
10    for maintaining a sustained pace of reform.  Should their
11    efforts or defendants' ability to translate their commitments
12    into meaningful change wane, the Court will be in a more
13    appropriate position to entertain a receivership application,
14    and at the conference following the next monitor report, the
15    Court will again hear the parties as to whether further
16    commencement of motion practice or other further intervention
17    is necessary.
18         So the application to commence motion practice and a
19    full briefing schedule is denied at this point without
20    prejudice to renewal after the next report.
21         I now turn to the monitoring team's request to modify
22    the reporting schedule.  The Court has carefully considered the
23    request, and the Court grants the request to modify the
24    monitoring team's reporting schedule as set forth in Section G,
25    paragraphs 2(iii) and (iv) and paragraph 5(ii)(2) of the