UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JERELLE DUNN, SAMUEL SEMPLE, ANDRE WASHINGTON, MATTHEW CHRISTIANSON, WILLIAM CLANTON, SAMIR SHABAN, and MICHAEL PENA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  -against-<br><br>THE CITY OF NEW YORK,<br><br>        Defendant. | Case No: 21-CV-09012 (DLC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

i

TABLE OF CONTENTS

ARGUMENT ............................................................................................................................... 1

    I.    Conditions at Rikers Island Have Been Unlawful for the Entire Class Period. ................... 1

    II.    As Questions Common to the Class Exist, Commonality Is Satisfied. ............................ 3

    III.    Plaintiffs' Claims are Typical to the Class. ....................................................................... 5

    IV.    Plaintiffs Will Fairly and Adequately Represent the Class. .............................................. 6

    V.    The Class Is Easily Ascertainable. ..................................................................................... 7

    VI.    Issues Common to the Class Predominate. ...................................................................... 7

    VII.    A Class Action Is Superior. ............................................................................................ 10

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Abdi v. Duke*, 323 F.R.D. 131 (W.D.N.Y. 2017) .............................................................................. 4

*Augustin v. Jablonsky (In re Nassau Cty. Strip Search Cases)*, 461 F.3d 219 (2d Cir. 2006) .. 8, 9, 10

*Betances v. Fischer*, 304 F.R.D. 416 (S.D.N.Y. 2015) ................................................................ 4, 10

*Butler v. Suffolk County*, 289 F.R.D. 80 (E.D.N.Y. 2013) ........................................................ 4, 5, 8

*Casale v. Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009) ........................................................................... 7

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007) ............ 8

*Darnell v. Piniero*, 849 F.3d 17 (2d Cir. 2017) ................................................................... 4, 5, 7, 8

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .......................................................... 7

*Fonseca v. Dircksen & Talleyrand Inc.*, 2015 U.S. Dist. LEXIS 136427 (S.D.N.Y. Sep. 28, 2015) ............................................................................................................................................. 5

*In re Nassau County Strip Search Cases*, No. 99-CV-3126, 2008 U.S. Dist. LEXIS 29083 (E.D.N.Y Mar. 27, 2008) .............................................................................................................. 4

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) ....................................................... 7

*In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ........................... 10

*Ingles v. City of NY*, 2003 U.S. Dist. LEXIS 2453 (S.D.N.Y. Feb. 18, 2003) ............................... 5

*Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012) .............................................................................. 6

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) .................................................... 4

*Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997) ..................................................................... 5

*Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016) ................................................................... 8

*Perez v. Decker*, 18-cv-10683 (AJN), 2020 U.S. Dist. LEXIS 222884 (S.D.N.Y. Nov. 30, 2020) 4

*Sanchez v. State*, 99 N.Y.2d 247, 252 (2002) ................................................................................ 6

*Scott v. Quay*, 338 F.R.D. 178 (E.D.N.Y. 2021) .................................................................. 6, 8, 10

*Solomon v. Nassau County*, 759 F. Supp. 2d 251, 264 (E.D.N.Y. 2011) ...................................... 6

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) ......................................... 8, 10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................... 4

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ............................... 5

The City of New York created the inhumane conditions on Rikers Island, allowed them to fester for a generation, and finally promised to close the facility altogether. The City then held Plaintiffs—and every putative class member—in these abysmal conditions while the promise to close Rikers remained years' away. The City knew all at Rikers Island would live in filth, be deprived of necessities like warm meals and exercise, and live without access to medical care in the midst of rampant violence. The City's admissions contradict the City's argument that the conditions at Rikers Island are a product of the Covid-19 pandemic. Defendant's argument that each class member has a particularized experience fails, as Plaintiffs allege all class members experiences are the result of the City's pattern of conduct. All class members, regardless of their actual experiences, are entitled to general damages to redress the City's violation of their right to basic human dignity. As all Rule 23(a) and (b) factors are satisfied, a class should be certified.

## ARGUMENT

**I.    Conditions at Rikers Island Have Been Unlawful for the Entire Class Period.**

The City invokes the sheer scope of its years of failed management as a makeshift defense to class certification, arguing that even if the horrors described in the Complaint are true, (which they are in fact and are presumed to be in this motion), "there are simply too many people and too many needs and too many services and too many individual circumstances," to adjudicate this matter as a class. ECF No. 43, Def's Mem. of Law in Opp. ("Opp.") at 8. The City faults Plaintiffs for picking on Rikers Island because it is "an easy target" and portray Plaintiffs as riding a "crest of criticism," by "advocates, elected officials, and court monitors." *Id.* at 4.

The City is wrong. The magnitude of the City's failures has injured every single person held at Rikers Island throughout the class period. The conditions are so bad that every class member has suffered a loss of humanity and dignity in violation of the constitution, and this

universal harm ties the class together. The City does not meaningfully claim otherwise. How could it? As Mayor de Blasio stated in 2015, "Let's face it—for many years, Rikers Island has been a dehumanizing environment." Moore Decl. ("Moore") ¶ 46, ECF Nos. 41 and 41-36.

Conditions were so abysmal leading up to the start of the class period that the City announced a $30 million plan in 2017 to close the Rikers jail complex. Moore ¶ 46, ECF Nos. 41, 41-38. The Court should reject the City's attempt to limit the class to loss of services at Rikers during the COVID-19 pandemic, which ignores Plaintiffs' substantial evidence and Defendant's own admissions of longstanding unconstitutional conditions, decaying infrastructure, poor sanitation, and an overall uninhabitable environment that has harmed, and continues to harm, everyone detained on the Island. Moore ¶¶ 3, 24, 26, 31–34, 39–42, 45, 46, 52, ECF No. 41; Moore Exs. 1, 16, 18, 23–26, 31–34, 37, 38, 44, ECF Nos. 41-18, 41-32, 41-33, 41-34; Orsland Decl. ("Orsland") ¶ 5. The death toll has risen to 19 for the year, as Edgardo Mejias died on December 11, during the pendency of this motion practice.[1]

The City admits that a court found "continuing on-going violations of constitutional import in a number of facilities" and "across a number of topic areas" resulting in the 2001 Environmental Order in *Benjamin v. Molina*, 75 Civ. 3072. Orsland ¶¶ 3, 4. The City admits that it is still not in compliance with "remaining open issues" of "Sanitation, Ventilation, Fire Safety, and Lighting." *Id*. ¶ 5. The City admits that the monitor in *Benjamin* is often critical of its lack of compliance with the mandate for sanitary conditions. *Id*. ¶ 9. Responses to the *Benjamin* monitor's reports on violations that the City offers in opposition to class certification only provide further evidence of unlawful conditions at Rikers Island. For instance, in response to evidence of violations in 2019, Defendant explained that the machines that dispense cleaning and sanitizing fluids were in frequent

---

[1] Jan Ransom and Jonah E. Bromwich, *Tracking the Death's in New York City's Jail System in 2022*, N.Y. Times (Dec. 12, 2022), https://www.nytimes.com/article/rikers-deaths-jail.html.

need of repair, intake areas were "challenging" areas to keep clean, and people "eat their meals in the housing areas and typically have commissary privileges, which can naturally lead to vermin activity." ECF No. 43-4 at 4–5. Despite arguing sanitation issues are limited to intake, the City's 2020 response to the *Benjamin* monitor admits "the housing areas themselves are definitely in need of improvement." ECF No. 43-7.

All class members' claims stem from the same City policy and practice of incarcerating people with deliberate indifference to their most basic human needs, and the City's negligence in failing to provide a safe and humane jail system. While the pandemic made the longstanding problem of mismanagement of staff especially apparent, this does not negate the unconstitutionally deplorable conditions that existed before COVID-19 and is not a defense to liability or to class certification. Furthermore, the City's recent admissions in *Nunez v City of New York, et al.*, 11-cv-5845 (LTS) (S.D.N.Y.) contradict their attempts to use Covid-19 as a shield. On November 17, 2022, DOC Commissioner Molina testified that the new administration was facing "long-standing systemic issues that have plagued the department." Moore Reply Decl., Ex. 1 at 16:19–20. Molina further testified that "the reasons we are at this point is because of the intentional disinvestment in this department's staff, infrastructure, and people in custody from 2015 to 2021." *Id*. at 19:5–7. The City argued the new administration was facing "decades-long problems" when arguing against a federal receiver taking over management of Rikers. Moore Reply Decl., Ex. 2 at 6. Plaintiffs agree with the Commissioner—Rikers Island has not been fit for use for many years. Certifying a class of all held at Rikers Island from November 2, 2018 to the present is appropriate.

**II.     As Questions Common to the Class Exist, Commonality Is Satisfied.**

`        All class members' claims arise from the same practices, policies, procedures, and decisionmakers. Commonality is met, as resolution of the legal and factual issues of whether the

City maintains a jail complex at Rikers Island that deprives incarcerated people of the "minimal civilized measures of life's necessities," *Darnell v. Piniero*, 849 F.3d 17, 27 (2d Cir. 2017), and whether the City has a practice amounting to a de facto policy of negligence and deliberate indifference to jail conditions will drive resolution of claims on behalf of the entire class. *See, e.g., Butler v. Suffolk County*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) ("Whether the County was aware of and deliberately indifferent to the conditions at the [Suffolk County jail] is a common question subject to class-wide resolution."); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (finding commonality when common questions are "apt to drive the resolution of the litigation").

Defendant's contention that commonality is not met because class members' injuries may differ depending on specific services they lacked or conditions they experienced fails in multiple ways. *First*, if true, a liability class could (and should) be certified, and damage claims could be individually litigated. *Second*, this ignores Plaintiffs' theory of general damages arising from universal injuries to basic human dignity. Class members subjected to the unlawful conditions suffer loss of human dignity, entitling them to general damages, which can be calculated on a class-wide basis. *See Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015); *In re Nassau County Strip Search Cases*, No. 99-CV-3126, 2008 U.S. Dist. LEXIS 29083, at *3–7 (E.D.N.Y Mar. 27, 2008). *Third*, it misconstrues the commonality requirement. "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137–38 (2d Cir. 2015).

Courts routinely find commonality where, as here, injuries of a class arise from a "unitary course of conduct" or "single policy of defendants," especially when defendants are government entities. *Perez v. Decker*, 18-cv-10683 (AJN), 2020 U.S. Dist. LEXIS 222884, at *23 (S.D.N.Y. Nov. 30, 2020); *Abdi v. Duke*, 323 F.R.D. 131, 144 (W.D.N.Y. 2017) (finding commonality as

4

deficiencies in the parole system procedures "stem from central and systemic failures" and apply across-the-board to each proposed class member). Class certification is especially appropriate here, as "conditions must be analyzed in combination, not in isolation" and "may be aggregated to rise to the level of a constitutional violation." *See Darnell*, 849 F.3d at 29.[2]

As Plaintiffs allege the City injured the class under a common course of conduct, variances in class members' circumstances do not defeat commonality. *Marisol A. v. Guiliani*, 126 F.3d 372, 377 (2d Cir. 1997). The City's argument "boils down to a concern that damages among class members will differ." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) (finding commonality among employees at 3 different locations with different job duties); *Fonseca v. Dircksen & Talleyrand Inc.*, 2015 U.S. Dist. LEXIS 136427, at *8 (S.D.N.Y. Sep. 28, 2015) (rejecting the argument that answers to common questions vary "significantly from position to position, person to person, day to day, shift to shift, and customer by customer").

### III. Plaintiffs' Claims are Typical to the Class.

There "is no requirement that the factual background of each named plaintiff's claim be identical to that of all class members." *Ingles v. City of NY*, 2003 U.S. Dist. LEXIS 2453, at *15-16 (S.D.N.Y. Feb. 18, 2003). Typicality only "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Id.* The "unitary course of conduct" makes Plaintiffs' claims typical of the entire class. *See Butler*, 289 F.R.D. at 99 (finding typicality where injuries "aris[e] out of the same allegedly unconstitutional conditions").

---

[2] In attempting to treat the myriad of problems at Rikers Island as discrete issues, Defendant refuses to acknowledge the Circuit's holding that jail "conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has a bearing on another." *Darnell,* 849 F.3d at 29.

Plaintiffs and class members will have to prove the same elements of their legal claims of deliberate indifference and negligence and will put forth the same evidence of the City's policies and practices that created the inhumane and dangerous conditions to continue at Rikers and allowed them to fester. They will show that the City deprived class members "of their basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health," *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). They will show the City violated its duty to provide class members with a safe and humane jail environment. *See Sanchez v. State*, 99 N.Y.2d 247, 252 (2002) (duty of care in prison context); *Solomon v. Nassau County*, 759 F. Supp. 2d 251, 264 (E.D.N.Y. 2011); *Scott v. Quay*, 338 F.R.D. 178 (E.D.N.Y. 2021) (certifying a class bringing a negligence claim against the United States for conditions at the Metropolitan Detention Center).

## IV.  Plaintiffs Will Fairly and Adequately Represent the Class.

Plaintiffs' theory is not that everyone in the class experienced the same violent acts or uses of force. Rather, Plaintiffs allege that the dangerous environment forces everyone at Rikers to live in reasonable fear of violence, such that fear is a condition of confinement. The City also argues that Plaintiffs cannot adequately represent class members who were deprived of distinct medical care, Opp. at 18–19, while admitting that it is in violation of a contempt order for failing to transport detained persons to sick calls, Orsland ¶ 16.[3] Again, Plaintiffs theory is not that they and all class members experienced the same medical issues, but that every person at Rikers is in a jail environment where they cannot expect reasonable safety or adequate medical care and suffer a loss of human dignity from this condition.

---

[3] The City does not argue it provided sufficient medical care during the entirety of the Class Period but argues that for a two-month period, there were only 186 missed medical appointments due to lack of escorts. Orsland ¶ 17.

Plaintiffs will adequately represent the class, as they "have an interest in vigorously pursuing the claims of the class" and have "no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Any prospective class member with significant injuries may opt out of the class and pursue individual claim(s). Only a "fundamental" conflict or potential conflict can defeat class certification. *Id.* No such conflict exists here. The City's argument that Plaintiffs must submit affidavits fails, as allegations in the complaint are accepted as true, and a "preliminary inquiry into the merits of the case" at class certifications stage is improper. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006).

## V. The Class Is Easily Ascertainable.

The class definition is straightforward: Everyone detained on Rikers Island during the class period. Ascertaining the Class members is as simple as determining who was in custody at Rikers during the class period, information which is readily available and easily accessible to the City. *See* Moore ¶ 62, Ex. 54; *Casale v. Kelly*, 257 F.R.D. 396, 413 (S.D.N.Y. 2009) (finding "records maintained by the City" may identify the class members). Plaintiffs allege that the overall jail environment at Rikers Island is unlawful, and the City has been deliberately indifferent and outright negligent in its operation of the facility.[4] All at Rikers are subjected to the harms alleged. *See Darnell*, 849 F.3d at 29 (holding conditions "may be aggregated to rise to the level of a constitutional violation"). The City's disagreement improperly "conflates merits questions with the very simple class definition provided by plaintiffs." *See id.*

## VI. Issues Common to the Class Predominate.

Plaintiffs must show that issues subject to generalized proof, and thus applicable to the class, predominate over issues subject to individualized proof. *Cordes & Co. Fin. Servs., Inc. v.*

---

[4] In a glaring error, the City's opposition does not engage with the negligence claims. Whatever arguments the City may present against the 14th Amendment deliberate indifference standard, it effectively concedes negligence.

7

*A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–08 (2d Cir. 2007). Plaintiffs, however, need not "prove that each element of [their] claim is susceptible to classwide proof." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015). "[A] court should err on the side of certification because certification 'is always subject to modification should later developments during the course of the trial so require.'" *Mazzei v. Money Store*, 829 F.3d 260, 267 n.7 (2d Cir. 2016). Predominance instead tests "whether the class is a 'sufficiently cohesive unit," and the court must examine all factual or legal issues that are common to the class. *Augustin v. Jablonsky (In re Nassau Cty. Strip Search Cases)*, 461 F.3d 219, 227 (2d Cir. 2006).

Plaintiffs seek to represent a class of all people held at Rikers Island from November 2, 2018 to the present, as the conditions the City created in its management of Rikers Island caused all class members to suffer a loss of human dignity. Plaintiffs claim the conditions of confinement as a whole were unlawful. *See Darnell*, 849 F.3d at 29. The common questions of whether the conditions at Rikers Island during the Class Period violated the constitution and whether the City was deliberately indifferent to the conditions, as well as the scope of the City's duty of care to people detained at Rikers Island, whether the City breached its duty, and whether the City therefore injured class members predominate over the issue of individual class members' damages. *See Butler*, 289 F.R.D. at 102. *Scott*, 338 F.R.D. at 190.

Defendant acknowledges that when a detention system has a policy applying to all detained there, class certification is appropriate but attempts to distinguish *In re Nassau County Strip Search Cases* by arguing class certification was contingent on the fact that the jail had a "simple policy" of strip searches. Opp. at 27. Defendant then argues a claim for "general management deficiencies" would not have the same or similar effect on every individual. *Id*. However, individual liability issues were present in *In re Nassau County Strip Search Cases*, as the defendant asserted a defense

8

that some class members were searched based on a reasonable suspicion separate from the blanket strip search policy. 461 F.3d at 231. Nevertheless, the Second Circuit found the district court had erred in holding that individual liability issues predominated. *Id*.

Defendant misconstrues the claims and evidence that Plaintiffs will put forth. Defendant argues that the only generalized proof Plaintiffs will put forth is the "lack of staffing" which will not suffice to support a claim for all class members. Plaintiffs allege the City has utterly failed in its management of Rikers Island—including management of staff—for the entirety of the class period. ECF No. 42 at 14. Defendant argues that class members are subjected to different levels of violence and injuries in excessive force and failure to protect cases "vary wildly," as do the circumstances for deaths. Plaintiffs allege that violence is so pervasive at Rikers Island such that all people held at Rikers Island during the Class Period were held in a condition in which they were forced to live in fear of the constant and real threat of violence. ECF. No. 42 at 10.

Whether the City's neglect of Rikers Island created the condition of fear of violence is a question subject to generalized proof, such as Commissioner Molina's statement attributing violence to the crumbling infrastructure, resulting from "over a decade of neglect" especially acute when the decision was made to close Rikers. ECF No. 41 ¶ 59, Ex. 51. Defendant's argument that Plaintiff's claims that sanitation issues are isolated to the intake areas (not housing areas) and related "staffing issues affecting DOC in the wake of the pandemic" is contradicted by its own submissions. Opp. at 26; *supra* Section I. Furthermore, all people held on Rikers Island are subjected to intake conditions, as they are transferred to and from intake when moving housing areas, going to outside clinics, courts, or upon entering or exiting custody. ECF No. 43-5 at 3.

While some class members were physically injured, Defendant ignores that Plaintiffs seek to certify a class for general damages for loss of human dignity, which is subject to generalized

proof, as it "need not be specifically proved." *Betances*, 304 F.R.D. at 431. Regardless, as liability can be determined on a class-wide basis, the existence of individualized damage determinations for physical injuries does not preclude class certification. *Sykes*, 780 F.3d at 81. The Court has many tools to address individualized damages issues that may arise, such as bifurcating liability and damages trials, appointing a special master for individual damages proceedings, decertifying after liability with notice to the class on proving damages, creating subclasses, or altering the class. *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 231 (citing *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)).

## VII. A Class Action Is Superior.

Defendant argues a class is not appropriate as there is a "great deal of litigation" (including 846 lawsuits filed in 2022). Opp. at 28. If anything, the small number of cases filed in comparison to the total number of class members shows the efficiency of litigating as a class. The scope of the present litigation speaks to the magnitude of the issues before the Court. Plaintiffs seek redress for the City's fundamental failings that harmed all class members. The interest in individual control is minimal, as the class is comprised of "incarcerated and recently incarcerated people, who are likely to lack the resources or legal training to vindicate their rights." *Scott*, 338 F.R.D. at 191. Class members with injuries may wish to opt out of the class if relief obtained does not adequately address those damages, but they have an interest in litigating as a class, as the issue of liability is class wide. Plaintiffs seek general damages for loss of dignity and that the court has several tools available to address individualized damage issues. Superiority is satisfied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the class as set forth above, pursuant to Rule 23(a) and (b)(3).

Dated: New York, New York
December 19, 2022

**BELDOCK LEVINE & HOFFMAN LLP**

By: _/s/ Jonathan C. Moore_
    Jonathan C. Moore
    David B. Rankin
    Deema Azizi
    Regina Powers

99 Park Avenue, PH/26th Floor
New York, NY 10016
t: 212-490-0400
  212-277-5825
e: jmoore@blhny.com
  drankin@blhny.com
  dazizi@blhny.com
  rpowers@blhny.com

**RICKNER PLLC**

By: _____/s/_____
    Rob Rickner
    Masai I. Lord (of counsel)
    Stephanie Panousieris

14 Wall Street, Suite 1603
New York, NY 10005
t: 212-300-6506
e: rob@ricknerpllc.com
  mlord@lordlawgroup.com
  stephanie@ricknerpllc.com

**THE LAW OFFICE OF CHRISTOPHER H. FITZGERALD**

By: _____/s/_____
Christopher H. Fitzgerald

14 Wall Street, Suite 1603
New York, NY 10005
t: 212-266-2275
e: CFitzgerald@CHFLegal.com

*Attorneys for Plaintiffs*